**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Passages Hospice, LLC | ) | Case No. 16-34142 |
| | ) | |
| | ) | Judge Janet S. Baer |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Gina Krol, as Chapter 7 Trustee for | ) | |
| Passages Hospice, LLC | ) | Adversary No 18-AP-00783 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| David Meiselman, | ) | |
| Defendant. | ) | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Gina B. Krol, as Trustee of the above-captioned bankruptcy estate, by her attorneys, Abraham Brustein and Julia Jensen Smolka, responds in opposition to the Motion to as follows:

**Introduction**

In this adversary proceeding, the Trustee seeks to avoid transfers made to the Defendant using her strong-arm powers under §544(b) of the Code pursuant to which she can exercise rights that would have been available to an unsecured creditor under applicable law, but for the filing of the bankruptcy petition. In Counts I through III, the Trustee uses the Illinois Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et. seq.*)("UFTA") as the substantive law for avoiding the transfers. In Counts IV-VI, the Trustee uses the Subchapter D of the Federal Debt Collection Procedure Act, 28 U.S.C. §3001 *et. seq.* ("FDCPA") which at 28 U.S.C. 3306(b) provides for a six-year statute of limitations.

1

Defendant has filed a motion to dismiss Counts IV-VI, asserting that the FDCPA is not applicable law which can be used by a trustee under Section 544(b), and that the FDCPA itself prohibits any application of the statute that would modify provisions of the Bankruptcy Code, relying on 28 U.S.C. §3003(c)(1). The Defendant has not sought dismissal of Counts I-III, which rely on the UFTA as applicable substantive law. Accordingly, it is apparent that Defendant is not contesting whether the United States of America ("USA") may be used by a trustee as the golden creditor for purposes of Section 544(b). Rather, Defendants statute of limitations argument is based upon two contentions. First, treating the FDCPA as applicable law would violate 28 U.S.C. §3003(c) because it would modify the provisions of the Bankruptcy Code. Second, that the Bankruptcy Code should not be applied to grant to bankruptcy trustees extended statutes of limitations that, outside of bankruptcy, would only be available to the USA or the governmental entities. The Defendant relies on *In re Mirant Corp.,* 675 F. 3d 530, 535 (5th Cir. 2012) for its first proposition of law and on *In re Vaughan Co.,* 498 B.R. 297, (Bankr. NM 2013) for its second proposition. However, the *Mirant* and *Vaughan* are decisions expressing a distinctly minority view. They have been criticized in subsequent cases. The correct analysis of these issues is set forth in *In re Kaiser,* 525 B.R. 697,711(Bankr. N.D. Ill. 2014). Accordingly, the motion should be denied.

**Factual Allegations**

The Debtor provided hospice services to residents of skilled nursing facilities (¶14)[1]. The Defendant held a 25% membership interest in the Debtor (¶12). Beginning no later than August 2010, the Debtor was engaging in an ongoing scheme to defraud Medicare and Medicaid by enrolling residents of skilled nursing facilities in Medicare and Medicaid funded hospice services even though the patients did not qualify for those services. The Debtor did so in order to obtain

---

[1] References to ¶ refer to the Adversary Complaint.

reimbursement from Medicare and Medicaid to which the Debtor was not entitled (¶¶17-25). Additionally, the Debtor enrolled patients in the highest level of hospice care (known as GIP care) who did not qualify for that level of care. It did so in order to obtain enhanced reimbursements from Medicare and Medicaid (¶¶21-25).

In 2009 three relators filed a *qui tam* complaint in the United States District Court for the Northern District of Illinois, Eastern Division, *United States of America ex rel., the State of Illinois ex rel., Miki Magnino et al.*, Case No. 09-C-2009 ("*Qui Tam* Suit") against Passages and Seth. (*Id.* ¶26) The *Qui Tam* Suit *was* based upon the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.,("FCA"), and the related Illinois Whistle Blower Reward and Protection Act, 740 ILCS §§ 175/1 *et seq. (Id. ¶ 27)*

The USA began a criminal investigation of the Debtor in 2009, and issued an 18 count indictment on May 22, 2014 (¶¶29,31). The Debtor executed a plea agreement on February 22, 2016 (¶22; Ex. C).

On April 20, 2017, the USA filed 3 proofs of claim in this case, which are summarized below:

A) Claim No. 13 (Exhibit E) is for $9,000,000. It is based upon the judgment entered in the criminal case on March 14, 2017;

B) Claim No. 14 is for damages under the FCA in the amount of $18,000,000 (Exhibit F); and

C) Claim No. 15 was filed by the U.S. Department of Health and Human Services in the amount of $58,482,395.04 for that Agency's overpayments to the Debtor for Medicare reimbursements based upon fraudulent billing practices during the period April 25, 2012 through February 25, 2015 (¶38, Ex. G).

**Standards of Review in Opposition to a Motion to Dismiss**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 678. Dismissal on statute of limitations grounds "is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP* 559 F.3d 671, 674-75 (7th Cir. 2009) In this matter, the Trustee has alleged a cause of action against the Defendant to reclaim funds which were transferred to the Defendant which were more than four years before the petition date because the Trustee is able to step into the shoes of the United States government and utilize the United States' extended recovery lookback period afforded to it outside of bankruptcy with the Federal Debt Collection Practices Act.

**Relevant Statutes**

11 U.S.C. 544(b)(1) provides:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. 502 (a) provides:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

4

No party in interest has filed an objection to the USA's claims. Therefore, they are deemed allowed pursuant to Section 502(a) of the Code.

In interpreting a statute, the first step is to determine if there is any ambiguity in the statute's text. *U.S. Ron Pair Enterprises,* 489 U.S., 235, 241 (1989). If there is no ambiguity, no further inquiry is necessary or appropriate. *Kaiser,* 525 B.R. at 711, citing *Sebelius v. Cloer,* 659 U.S. 369, 133 S. Ct. 1886, 1895 (2013). There is no dispute that the USA, having filed three claims is a creditor whose rights the Trustee can assert under Section 544. The Defendant does not challenge that position.

Section 544 "enables a trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy' except the trustee will recover the property for the benefit of the estate." *In re Equip. Acquisition Res. Inc.* 742 F.3d 743, 746 (7th Cir. 2014). As a result, "if any unsecured creditor could reach an asset of the debtor outside bankruptcy, the trustee can use Section 544(b) to obtain that asset for the estate." *In re Leonard*, 125 F.3d 43, 544 (7th. Cir. 1997).

In the absence of a bankruptcy case, the USA could have used the FDCPA to avoid transfers made by the Debtor within six years of the date of transfer. 28 U.S.C. § 3306. The Defendant does not challenge the USA's right to have done so. Instead, the Defendant is claiming that a trustee cannot resort to FCPA as applicable law because doing so would modify the previsions of the Bankruptcy Code. The principal authority for this proposition is *In re Mirant*. However, its reasoning has been criticized. The majority of subsequent cases have not followed it. *Mirant* is an unpersuasive authority.

5

### *In re Mirant* is not Persuasive Authority

The Defendant's principal argument is that allowing a trustee to use the 6-year statute of limitations in the FDCPA is impermissible because 28 U.S.C. §3003 provides that the FDCPA "shall not be used to supersede or modify the operation of-(1) title 11." This conclusion, adopted by *Mirant*, has been rejected by numerous later decisions. *Mirant* resorted to FDCPA's legislative history to reach its conclusion. *Id.* at 536. This was improper because there is no ambiguity in §544(b) of the Code. The defect in *Mirant's* reasoning was exposed in *Kaiser* where the court noted that the trustee's use of the government's rights under the FDCPA is an implementation of Section 544, not a modification of the Bankruptcy Code, (525 B.R. at 713, n. 11), *Kaiser* reasoned:

> That a different result occurs when the IRS's rights under the FDCPA are invoked under section 544 is not a "modification to the operation of Title 11," *id.*, in the same way that altering variables in a formula is not a modification of the formula itself. The formula operates as it always does, yet with different results. Section 544 is simply an enabling formula. What variables are input into section 544 will always change the result, but that is not a modification of either section 544's operation or of the operation of Title 11 as a whole. Judge Cropper in the Southern District of New York has the better take on this question:

In *In re Alpha Protective Services, Inc.,* 531 B.R. 889, 905-906 (Bankr. N.D. Ga. 2015) the court critically examined both sides of this question, noting body of caselaw that refuses to follow *Mirant* and reiterating that the focus of determining what constitutes "applicable law" should be on Section 544 of the Code, not the legislative history of the FDCPA. Once a trustee has identified a particular creditor with an allowed claim that has actual rights under applicable law, the trustee may use those rights to the extent permitted under the identified "applicable

law"; here, the FDCPA. *Alpha Protective Services* then summarized the case law that rejects Defendant's position:

> In the other corner is a line of cases holding the FDCPA can be "applicable law" for the purposes of § 544(b), thereby allowing a trustee to use the FDCPA's statute of limitations. *See In re Kaiser,* 525 B.R. 697, 713 (Bankr.N.D.Ill.2014) (treating the FDCPA as applicable law and allowing the trustee to use the IRS as the "golden creditor" under 544(b)); see also *In re Tronox Inc.,* 503 B.R. 239, 272–75 (Bankr.S.D.N.Y.2013) ; *In re Pfister,* 2012 WL 1144540, at *5 (Bankr.D.S.C. Apr. 4, 2012) (holding transfers were avoidable pursuant to § 544(b)(1) and the FDCPA where the IRS was a creditor); *In re Walter,* 462 B.R. 698, 704–06, 712 (Bankr.N.D.Iowa 2011) (holding trustee sufficiently pled a claim under § 544(b)(1) and the FDCPA); *In re Porter,* 2009 WL 902662, at *20–21 (Bankr.D.S.D. Mar. 13, 2009) (holding that a trustee could step into the shoes of the Small Business Administration and bring claims under the FDCPA and take advantage of the FDCPA's six-year statute of limitations). These cases rely on the language of Section 544, rather than the language of the FDCPA, in finding the FDCPA is applicable law. *See In re Kaiser,* 525 B.R. at 711 (finding that the clear language of Section 544 allows the trustee to step into the shoes in the IRS and use the FDCPA reach back); *In re Tronox Inc.,* 503 B.R. 239 (noting that decisions such that in *In re Mirant* "fail to give sufficient weight to the language and purpose of § 544(b) ). I agree with the latter line of cases.

531 B.R. at 905-906.

More recently, *In re CVAH, Inc.,* 570 B.R. 816, 827-29 critically examined the question presented by the Defendant as to whether 28 U.S.C. §3003(c)(1) bars use of the FDCPA as applicable law for purposes of Section 544 of the Code. *CVAH* recognized *Mirant* but refused to accept it as persuasive authority in light of the contrary decisions in *In re Kaiser,* and *In re Tronox, Inc.,* 503 B.R. 239, 273 (Bankr. S.D.N.Y. 2013). *CVAH* adopted *Kaiser's* reasoning that

7

Section 544 of the Code is an enabling statute. Once the appropriate creditor and applicable law is identified, there is no need to go beyond the application of Section 544. *Id.* at 829. *CVAH* concluded:

> Once an "applicable law" is identified in the context of a specific case, the operation of § 544(b)(1) is complete. The Code does not attempt to prescribe how that "applicable law" is to be applied; and nothing in § 544(b)(1)'s language suggests that a specific result need be obtained by application of one "applicable law" over another. Put another way, whether the look-back period for avoidance of a fraudulent transfer is six-years under the FDCPA, rather than four or two-years under other laws, in no way impacts or changes the operation of § 544(b)(1), or any other provisions of Title 11, for that matter.
>
> **b. Legislative History**
>
> The Court's conclusion is based upon what it considers to be the unambiguous language of the FDCPA. If the FDCPA is unambiguous, any judicial inquiry about its meaning is complete. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there" and "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete").

570 B.R. 829.

In putting to rest the legislative history analysis adopted in *Mirant*, *CVAH* noted that isolated comments by a single legislator "rank among the least illuminating forms of legislative history." *Id.* at 830 citing *Garcia v. U.S.,* 469 U.S. 70, 76 (1984). In any event, given the plain meaning of the text of §544(b), there is no basis for a court to look to a committee member's floor comments.

In *In re Gaither,* 2018 WL 2687971 *Id.* at \*\*9-10 (Bankr. South Carolina; November 30, 2018) the court examined the argument the Defendants make here regarding the effect of 28 U.S.C. §3003(c)(1). Utilizing the plan language analysis that had been adopted in *Kaiser, Alpha Protective Services,* and *CVAH,* the *Gaither* court rejected *Mirant's* reasoning and found that the FDCPA is applicable law that can be used by a trustee notwithstanding 28 U.S.C. §3001(c)(1). *Id.*

The Defendant has presented no reason why this court should not be among those which adopt the reasoning of the emerging trend of cases that follow *Kaiser*. This court should reject *Mirant* and deny the motion.

### *In Re Vaughan* and its Public Policy Concerns Are Not Persuasive

Judge Barnes wrote an exhaustive opinion in *Kaiser* on the trustee's under Section 544 where a trustee seeks to pick a golden creditor with a statute of limitations that exceeds what is provided for in the UFTA. *Kaiser's* fact pattern is very similar to the pattern in this case. The Defendant fails to discuss in detail *Kaiser* and the cases which follow its reasoning. Instead, the Defendant asks this court follow *In Re Vaughan Co.* 498 B.R. 297 (D. New Mexico 2013). However, *Vaughan* was decided, not on the plain language of Section 544, but on policy grounds emanating from the disparity in the claims of the golden creditor compared to the claim the trustee seeks to avoid. *Vaughan* also relies upon on the doctrine of *nullum tempus* which would operate to limit extended statues of limitations to public body creditors, to the exclusion of a bankruptcy trustee. *Id.* at 304. Both are public policy concerns. Neither reason is persuasive.

In *Vaughan,* the debtor operated what was later revealed to be a Ponzi scheme. Over 500 creditors filed $69 million dollars in claims. The IRS only had a $972,000 claim. The *Vaughan* court was unwilling to find that the trustee could assert that she is immune from the four-year

statute of limitations that applied to New Mexico's state law on fraudulent transfer claims simply because the IRS, who had a relatively small claim, was a "golden creditor" merely collecting back taxes. The *Vaughan* court was influenced by the fact that the golden creditor's claim was comparatively small in relation to the other claims. In fact, in *Vaughan*, the IRS's claim was less than 2% of the overall claims. In this matter, the USA's claims are by far the largest. In this matter, the USA will receive the predominant portion of the distributions to creditors. So, any consideration on the disparity of the USA's claim versus the other claims is a non-issue.

In *Kaiser*, Judge Barnes declined to follow *Vaughan* and said *Vaughan's* finding on state sovereignty and public policy to be misplaced.

> "The view that the statute of limitations available to the IRS may not be invoked by a bankruptcy trustee has no basis in the plain language of section 544 (b). It is well established that suits by the Trustee under section 544(b) are derivative; the Trustee steps into the shoes of a creditor and enforces the rights of that creditor for the benefit of the bankruptcy estate. So while ̶the unsecured creditor's ability to trump the applicable state statute of limitations might derive from its sovereign immunity,… the estate representative's ability to override that same limitation derives from Section 544(b).'" (quoting Greater Se. Cmty Hosp.365 B.R. 293, 304 (Bankr. D.D.C. 2006)).

See *Kaiser* 525 B.R. at 713.

Post *Kaiser* decisions have refused to follow *Vaughan*. In fact, only 5 cases cite to Vaughan, and none of those cases agree with the findings. The cases disagree or decline to follow it[2]. *In re Kipnis*, 555 B.R. 877 (Bankr.S.D.Fla, 216), the *Kipniss* court discusses Vaughan and does not follow it. In *Kipniss*, "the fundamental problem with Vaughan's analysis is its failure to start where courts must start in interpreting statutes and that is to look at the statute's plain meaning." *Id.* at 882.

---

[2] *In Re Kipnis* 555BR 877, 881 +; *In re Gaither* 2018 WL 6287971, *9-10; *In re CVAH, Inc*. 570 BR 816, 834+; *In re Kaiser* 525 BR 697, 713; *In re Behrends* 2017 WL 4513071, *9

10

The *Vaughan* analysis is based entirely on policy considerations. *Vaughan* worried that most debtors who file Chapter 7 bankruptcies tend to owe money to the IRS, so a ruling which allowed the trustee to step into the shoes of the IRS would extend the statute of limitations and would make the individual state's statute of limitations meaningless. *Kaiser* rejected this policy analysis concluding, "the court is, however, not a court of policy. 525 B.R. at 713. When the law is clear, the court need not look to the underlying policy." *United States v. Ron Pair Enter*s., 489 U.S. 235, 240-41, 109 S. Ct. 1026, 103 L.Ed.2d. 290 (1989). ("As long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute"); *In re Equip. Acquisition Res., Inc.,* 742 F.3d 743, 747 (7th Cir.2014). *Kaiser* 525 B.R. 713-714 (citations and quotations in original).

In *Kipniss,* the court rejected *Vaughan's* policy concerns about the flood of trustees jumping into the shoes of the IRS. *Kipness*, like *Kaiser* and the authorities referenced in footnote 2, looked to the text of Section 544(b), which contains no language limiting avoidance actions to government creditors only. So "the court was not going to simply on its own read that limitation into the text. To do so would require the Court to ignore basic and important rules of statutory construction."

**The Trustee Can Use The Statue of Limitations Under the False Claims Act**

The Defendant completely ignores the statute of limitations for the False Claims Act which is 6 years since the date the false claim is made. 31 U.S.C. §3731(b)(1). Given that the USA could have filed a claim under the UFTA for the amount recognized in claim number 14. Because the USA could have done so, this case falls directly within the scope of *Kaiser* where the court held the 10-year statute of limitations of the IRS under the Internal Revenue Code was

11

applicable. 26 U.S.C. §§6501(c)(1). Even if this Court is persuaded by *Mirant* or *Vaughan* the Trustee still has viable claims that reach back under the False Claims Act.

## Conclusion

The Trustee has pled a plausible cause of action for recovery under Section 544. The USA has valid, unsecured claims. The plain language of Section 544 allows the case trustee to step into the shoes of any general unsecured creditor and enforce the rights of that creditor for the benefit of the bankruptcy estate. The Trustee has chosen to step into the shoes of the USA to take advantage of the longer lookback period on fraudulent transfers. The Defendant relies on cases that ignore the plain meaning of Section 544 and instead invokes misplaced policy concerns for its findings. This court should follow the reasoning in Kaiser and deny the motion to dismiss.

                                      Respectfully submitted,

                                      Gina B. Krol, as Trustee of
                                      Passages Hospice, LLC

                                      By:/s/ Julia Jensen Smolka
                                         One of her Attorneys

Abraham Brustien#327662
Julia Jensen Smolka#6272466
DiMonte & Lizak, LLC
216 W. Higgins Road
Park Ridge, Illinois 60068
Tel: 847-698-9600
Fax: 847-698-9623
abrustein@dimontelaw.com
jsmolka@dimontelaw.com