# IN THE UNITED STATES
# BANKRUPTCY COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Passages Hospice, LLC, | ) | |
| | ) | Case No. 16-bk-34142 |
| | ) | |
| | ) | Hon. Janet S. Baer |
| Debtor. | ) | |
| _____ | ) | |
| Gina Krol, as Chapter 7 Trustee for | ) | |
| Passages Hospice, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 18-ap-00783 |
| David Meiselman, | ) | |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant David Meiselman ("David"), by and through his attorney, James W. Corbett, as and

for his Answer and Affirmative Defenses to Counts IV through VII of Plaintiff's Complaint, states

as follows:

## INTRODUCTION

1. Gina B. Krol, only in her capacity as Trustee of the Estate ("Trustee" or

"Plaintiff") seeks to avoid transfers made to insiders of Passages Hospice, LLC ("Passages"

or "Debtor"). Those transfers occurred while and after the Debtor was engaged in massive

Medicare and other fraud. The victims of the fraud included the United States of America.

The fraud involved began no later than August 2008 and continued through at least January

2012. The fraud included placing patients on hospice care who were not qualified therefore.

The fraud also involved placing unqualified patients on general inpatient care ("GIP"), the

highest level of hospice care, for which greatly increased Medicare rates were paid. The fraud resulted in the United States of America and the Centers for Medicare & Medicaid Services ("CMS"), U.S. Department of Health and Human Services filing claims in this case totaling $27,000,000.00 and over $58,400,000.00 respectively. While this enormous debt accrued and thereafter the Debtor made distributions to Defendant, based upon Defendant's 25% membership interest in the Debtor. For the transfers made within four years of the petition date ("Four Year Transfers"), the Trustee seeks recovery pursuant to 544(b) of the Code in conjunction with the UFTA. The Trustee also seeks to recover the Four Year Transfers and the other transfers alleged herein pursuant to 5544(b) of the Code in conjunction with the FDCPA.

ANSWER: David admits that Plaintiff seeks to avoid transfers made to him by Debtor Passages Hospice, LLC ("Passages" or "Debtor") based upon his 25% membership interest in the Debtor, and that Plaintiff seeks to recover such transfers pursuant to 544(b) of the Bankruptcy Code in conjunction with both the Uniform Fraudulent Transfer Act ("UFTA") of the State of Illinois and the Federal Debt Collection Procedures Act ("FDCPA").  The remaining allegations of Paragraph 1 of the Complaint are not directed against David, and therefore, he neither admits nor denies said allegations.

<u>JURISDICTION ALLEGATIONS</u>

2.  This Adversary Proceeding is brought in accordance with Rule 7001 of the Rules of Bankruptcy Procedure.

ANSWER: Defendant admits the allegations of Paragraph 2 of the Complaint.

3.   On October 26, 2016 ("Petition Date") Passages filed a voluntary petition for relief

under Chapter 7 of the Bankruptcy Code.

ANSWER: Defendant admits the allegations of Paragraph 3 of the Complaint.

4.   Plaintiff is the duly appointed and acting trustee of the Estate.

ANSWER: Defendant admits the allegations of Paragraph 4 of the Complaint.

5.   This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C.

157 and 1334, and also the Internal Operating Procedure 15(a) of the United States District Court

for the Northern District of Illinois.

ANSWER: Defendant admits the allegations of Paragraph 5 of the Complaint.

6.   This is a core proceeding within the meaning of one or more of the provisions 28

U.S.C. 157(b)(2)(A), (E), (H), and (O). If any of the claims asserted herein are determined to be

non-core, Plaintiff consents to the entry of final judgment by the Bankruptcy Court.

ANSWER: Defendant admits that this is a core proceeding within the meaning of one or more of

the provisions 28 U.S.C. 157(b)(2)(A), (E), (H), and (O).  The remaining allegations of

Paragraph 6 of the Complaint are not directed against David, and therefore, he neither admits nor

denies said allegations.

.

7.   Venue is proper in this district pursuant to 28 U.S.C. 1408 and 1409.

ANSWER: Defendant admits the allegations of Paragraph 7 of the Complaint.

8.   David Meiselman is an individual residing at 6641 N. St. Louis Avenue,

Lincolnwood, Illinois 60712.

ANSWER: Defendant admits the allegations of Paragraph 8 of the Complaint.

<u>FACTUAL BACKGROUND/ALLEGATIONS</u>

**A.  Passages' Business**

9.   Passages was a limited liability company organized in Illinois. Passages had four members, each of whom owned 25% of the membership interest.

ANSWER: Defendant admits the allegations of Paragraph 9 of the Complaint.

10. Seth Gillman ("Seth") was a managing member of the Debtor and held a 25% membership interest in the Debtor.

ANSWER:  Defendant admits that at some point in time Seth was a managing member of the Debtor and held a 25% membership interest in the Debtor.

11. Craig Frank ("Craig"), at all times relevant hereto, held a 25% membership interest in the Debtor. Craig is Seth's brother-in-law.

ANSWER: Defendant admits the allegations of Paragraph 11 of the Complaint.

12.  David Meiselman ("David"), at all times relevant hereto, held a 25% membership interest in the Debtor. David is Seth's brother-in-law.

ANSWER: Defendant admits the allegations of Paragraph 12 of the Complaint.

13. Michael Gillman ("Michael"), at all times relevant hereto, was a managing partner of the Debtor and held a 25% membership interest therein. Michael is Seth's father.

ANSWER:  Defendant admits that, at all times relevant hereto, Michael was a managing member of the Debtor, held a 25% membership interest in the Debtor, and is Seth's father.  Defendant denies the remaining allegations of Paragraph 13 of the Complaint.

14.     Passages' business was to provide hospice services. The recipients of Passages' hospice care resided in a skilled nursing facility ("SNF") or, in some cases, their homes.

ANSWER: Defendant admits the allegations of Paragraph 14 of the Complaint.

15.    Passages entered into agreements with many SNFs to provide services to certain of their patients requiring hospice care.

ANSWER: Defendant admits the allegations of Paragraph 15 of the Complaint.

16.    Passages received referrals from physicians and SNFs for patients who allegedly wanted hospice services.

ANSWER: Defendant admits that Passages received referrals from physicians and SNFs for patients who wanted hospice services.  Defendant has insufficient knowledge to form a belief as to the remaining allegations of Paragraph 16 of the Complaint, and therefore, he neither admits nor denies said allegations.

**B.  The Scheme to Defraud Medicare and Medicaid**

17.    Medicare is an insurance program created by statutes of the United States and funded by the United States. Medicare reimburses healthcare providers that provide eligible services to eligible Medicare recipients. The Medicare program was enacted under Title XVIII of the Social Security Act, 42 U.S.C. 1395 et seq.

ANSWER: The allegations of Paragraph 17 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient knowledge to form a belief as to the allegations of Paragraph 17 of the Complaint, and therefore, he neither admits nor denies said allegations.

18.    Medicaid is a government insurance program that is jointly funded by the United States and participating states. Medicaid was created by statutes of the United States. Pursuant to Medicaid, healthcare providers are reimbursed for eligible services provided to eligible low income Medicaid participants.

ANSWER: The allegations of Paragraph 18 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient

knowledge to form a belief as to the allegations of Paragraph 18 of the Complaint, and therefore,

he neither admits nor denies said allegations.

19.     Passages focused its business on servicing patients for whom Passages

could seek payment from Medicare or Medicaid for those services it rendered.

ANSWER: Defendant admits that Passages serviced patients for whom Passages could seek

payment from Medicare or Medicaid for those services it rendered.  Defendant has insufficient

knowledge to form a belief as to the remaining allegations of Paragraph 19 of the Complaint, and

therefore, he neither admits nor denies said allegations.

20.     Passages did not have its own facility for its hospice patients. Instead, it

deployed nurses to visit patients either in the SNF where they had already been residing or in the

patients' homes.

ANSWER: Defendant admits the allegations of Paragraph 20 of the Complaint.

21.     There are four levels of hospice care. The Medicare and Medicaid per diem

reimbursement to providers for hospice care varies for each of the four levels. The levels of care

are (a) routine home care, (b) continuous home care, (c) inpatient respite care, and (d) GIP care.

ANSWER: The allegations of Paragraph 21 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient

knowledge to form a belief as to the allegations of Paragraph 21 of the Complaint, and therefore,

he neither admits nor denies said allegations.

22.     GIP care is the most intensive level of care for hospice patients. Medicare

and Medicaid pay a higher per diem reimbursement for GIP than other levels of eligible hospice

care.

ANSWER: The allegations of Paragraph 22 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient knowledge to form a belief as to the allegations of Paragraph 22 of the Complaint, and therefore, he neither admits nor denies said allegations.

23.        Nurses were supposed to visit patients everyday if the patient was on GIP care.

ANSWER: The allegations of Paragraph 23 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient knowledge to form a belief as to the allegations of Paragraph 23 of the Complaint, and therefore, he neither admits nor denies said allegations.

24.        Beginning no later than August 2010, Passages embarked on a fraudulent scheme to dramatically increase its billing to and receipts from Medicare and Medicaid by enrolling patients for GIP who were not eligible for GIP or were not eligible for Medicare and Medicaid. It directed its own employees to ignore applicable Medicare and Medicaid guidelines to enroll patients for hospice services, including GIP, and to submit eligibility and claim documents to Medicare and Medicaid that were false in order to mask or hide the patient ineligibility.


ANSWER: The allegations of Paragraph 24 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient knowledge to form a belief as to the allegations of Paragraph 24 of the Complaint, and therefore, he neither admits nor denies said allegations.

25.  Passages senior executives, including Seth, devised and carried out this scheme. In doing so they intentionally and knowingly submitted false claims to Medicare and Medicaid.

ANSWER: To the extent the allegations of Paragraph 25 of the Complaint are directed against Defendant, Defendant denies said allegations. To the extent the allegations of Paragraph 25 of the Complaint are not directed against Defendant, he neither admits nor denies said allegations. Defendant also has insufficient knowledge to form a belief as to the allegations of Paragraph 25 of the Complaint, and therefore, he neither admits nor denies said allegations.

### C.  The Civil Suit to Stop and Recover the Proceeds of the Fraud

26.  In 2009 three relators filed a qui tam complaint in the United States District Court for the Northern District of Illinois, Eastern Division, United States of America ex rel., the State of Illinois ex rel., Miki Magnino et al., Case No. 09-C-2009 ("Qui Tam Suit") against Passages and Seth. An amended complaint was filed on November 22, 2011 which set forth the details of the fraudulent scheme as they existed at that the time.  A copy of the Amended Complaint, without exhibits, is attached as Exhibit A.

ANSWER: Defendant admits that a document entitled Amended Complaint, without exhibits, is attached to the Complaint herein as Exhibit A.  The remaining allegations of Paragraph 26 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient knowledge to form a belief as to the remaining allegations of Paragraph 26 of the Complaint, and therefore, he neither admits nor denies said allegations.

27.      The Qui Tam suit was based upon the False Claims Act, 31 U.S.C. 3729 et seq., ("FCA"), and the related Illinois Whistle Blower Reward and Protection Act, 740 ILCS

175/1 et seq.

ANSWER: The allegations of Paragraph 27 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient knowledge to form a belief as to the allegations of Paragraph 27 of the Complaint, and therefore, he neither admits nor denies said allegations.

28.      The FCA is a civil cause of action that can be brought by or in the name of the United States against persons who knowingly present a false or fraudulent claim to the United States. The conduct that gives rise to a claim under the FCA is set forth in 31 U.S.C. 3729 (a). The FCA provides for recovery of a civil penalty and trebling of the damages sustained by the United States.

ANSWER: The allegations of Paragraph 28 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient knowledge to form a belief as to the allegations of Paragraph 28 of the Complaint, and therefore, he neither admits nor denies said allegations.

29.      In 2009, the Department of Justice initiated a civil investigation into the billing practices of Passages pursuant to the authority given to it under the FCA. The Department of Justice served a civil investigative demand for records on Passages in July 2010.

ANSWER:  Defendant admits that at some point in time the Department of Justice initiated a civil investigation into the billing practices of Passages and that at some point in time afterwards the Department of Justice served a civil investigative demand for records on Passages. The remaining allegations of Paragraph 29 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations.  Defendant

also has insufficient knowledge to form a belief as to the remaining allegations of Paragraph 29

of the Complaint, and therefore, he neither admits nor denies said allegations.

30.    In or around January 2012 Michael replaced Seth as Manager and

exercised managerial control over Passages through the Petition Date.

ANSWER:  Defendant admits that at some point in time Michael replaced Seth as Manager

and exercised managerial control over Passages through the Petition Date. The remaining

allegations of Paragraph 30 of the Complaint are not directed against Defendant, and

therefore, he neither admits nor denies said allegations.  Defendant also has insufficient

knowledge to form a belief as to the remaining allegations of Paragraph 30 of the Complaint,

and therefore, he neither admits nor denies said allegations.


**D. The Criminal Case Against Passages, Seth, and Others**

31. On May 22, 2014 an 18 count indictment was issued in the Northern District

of Illinois in which the United States charged Passages and Seth with 16 counts of Health

care fraud in violation of 18 U.S.C.S 1347 and I count of conspiracy to obstruct a federal

audit in violation of 18 U.S.C. 1516 and 371. The indictment initiated a criminal case titled

USA v. Gillman et al., Case No. 14-CR-33 ("Criminal Case"). The indictment issued in the

Criminal Case also charged three other management level employees of Passages with

various, but not all, of the criminal offenses alleged in the 18 counts. A copy of the

indictment is attached as Exhibit B.

ANSWER:  Defendant admits that a copy of the indictment issued in the Criminal Case is

attached to the Complaint herein as Exhibit B.  Defendant further states that the terms of the

indictment speak for themselves.  The remaining allegations of Paragraph 31 of the

Complaint are not directed against Defendant, and therefore, he neither admits nor denies

said allegations.  Defendant also has insufficient knowledge to form a belief as to the remaining allegations of Paragraph 31 of the Complaint, and therefore, he neither admits nor denies said allegations.

32.     On February 22, 2016, Michael Gillman, as Manager of Passages, executed a plea agreement between Passages and the United States Attorney (attached as Exhibit C) in which he admitted that Passages had engaged in the following conduct:

A)    Beginning no later than August 2008 and continuing through January 2012, Passages participated in a scheme to defraud Medicare and Medicaid by use of materially false and fraudulent pretenses, and representations to obtain money from Medicare and Medicaid for the delivery of health care benefits and services (Exhibit C, 16 at 2);

B)    Passages submitted false claims to Medicare and Medicaid. They included requests for reimbursement of medically unnecessary hospice care, and hospice care for patients who were either not terminally ill or who did not qualify for such care (Id. at 2-3);

C)    Passages billed Medicare and Medicaid for GIP services that Passages and Seth Gillman, Passages' Manager at the time, knew were improper under applicable law, knowing that it was unlawful to submit false bills to Medicare and Medicaid (Id, at , 3);

D)    Passages paid bonuses to nursing directors and certified-nursing directors for the number of patients that were placed on GIP care each day as an incentive for the recipients to put patients on care knowing those patients did not need the extra nursing services Passages employees provided (Id. at 3);

E)    Passages intentionally and knowingly altered patient files that were subject to a Medicare audit in August 2009 in order to mask its wrongdoing and its submission of false claims to Medicare and Medicaid (Id. at 3-4); and

F)    Passages continued to place patients on GIP improperly even after it received notice from its internal compliance officer notifying Seth Gillman that Passages had enrolled patients for GIP who were not eligible. After receiving notice from its internal compliance officer, Passages continued with its pattern and practice of submitting false claims (Id. at 4-5).

ANSWER:  Defendant admits that a copy of the plea agreement executed by Michael

Gillman, as Manager of Passages, is attached to the Complaint herein as Exhibit C.

Defendant further states that the terms of the plea agreement speak for themselves.  The

remaining allegations of Paragraph 32 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient

knowledge to form a belief as to the remaining allegations of Paragraph 32 of the Complaint,

and therefore, he neither admits nor denies said allegations.

33.    On February 12, 2016 Seth entered into executed a plea agreement

between himself and the United States Attorney in which he admitted engaging in the same

conduct that Passages admitted to in its plea agreement, plus additional acts of wrongdoing

relating to the manner in which Passages enrolled patients for GIP. A copy of Seth's plea

agreement is attached as Exhibit D. The specific acts of wrongdoing by Passages that Seth

admitted to are set forth in para. 6 of this plea agreement (Exhibit D at 2-6).

ANSWER:  Defendant admits that a copy of the plea agreement executed by Seth is attached

to the Complaint herein as Exhibit D.  Defendant further states that the terms of said plea

agreement speak for themselves.  The remaining allegations of Paragraph 33 of the

Complaint are not directed against Defendant, and therefore, he neither admits nor denies

said allegations.  Defendant also has insufficient knowledge to form a belief as to the remaining

allegations of Paragraph 33 of the Complaint, and therefore, he neither admits nor denies said

allegations.

34.    Passages engaged in the conduct and activity that Passages and Seth admitted to in

their respective plea agreements.

ANSWER: The allegations of Paragraph 34 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.  Defendant also has insufficient

knowledge to form a belief as to the allegations of Paragraph 34 of the Complaint, and therefore,

he neither admits nor denies said allegations.

**E. The liabilities arising from the submission of false claims and over-billing as described in proofs of claim submitted by the government.**

35.    Passages ' plea agreement contains Passages ' acknowledgment and understanding

that the Court "must order restitution to the victims of the offense in an amount determined by the

Court." (Exhibit C, para. 7(b) at 5). The Court entered its judgment against Passages on March 14,

2017 in which it determined that the restitution due to the United States Department of Health and

Human Services' Medicare Program was $9,000,000.00.

ANSWER: The allegations of Paragraph 35 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.  Defendant further states that the

terms of the plea agreement executed by Passages speak for themselves.  Defendant further

states that the terms of the judgment entered against Passages in the Criminal Case speak for

themselves.

36.    The United States filed a proof of claim in this case on April 20, 2017 (Claim No.

13) based upon the judgment entered in the criminal case. A copy the proof of claim is attached

as Exhibit E.

ANSWER: Defendant admits the allegations of Paragraph 36 of the Complaint.

37.    The United States filed a proof of claim in this case on April 20, 2017 (Claim No.

14) based upon its right to receive treble damages under the False Claims Act and the adjudication

made in the criminal case that Medicare had suffered an actual loss of $9,000,000. Therefore, in

Claim No. 14, the United States claims an entitlement to an additional $18,000,000.00 under the

False Claims Act. A copy of Claim No. 14 (without exhibits) is attached as Exhibit F [1].

ANSWER:  Defendant admits that the United States filed a proof of claim in this case on

April 20, 2017 and that a copy of such proof of claim (Claim No. 14) is attached to the

Complaint herein as Exhibit F.  Defendant further states that the terms of said proof of claim

speak for themselves.  Defendant denies that such proof of claim is based upon the right of

the United States to receive treble damages under the False Claims Act and the adjudication

made in the criminal case that Medicare had suffered an actual loss of $9,000,000.  The

remaining allegations of Paragraph 37 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.

38.    The Centers for Medicare & Medicaid Services ("CMS") of the U.S. Department

of Health and Human Services filed a proof of claim in this case on April 20, 2017 (Claim No.

15) asserting a claim for $58,428,395.08 as of the Petition Date. The claim includes overpayments

made by Medicare to Passages based upon fraudulent billing practices. The CMS claim asserts

that during the period from April 25, 2012 through February 25, 2015 it overpaid Passages

$55,439,298.19 based upon fraudulent billings. A copy of claim no. 15 is attached as Exhibit G.

ANSWER:  Defendant admits that CMS filed a proof of claim in this case on April 20, 2017

and that a copy of such proof of claim (Claim No. 15) is attached to the Complaint herein as

Exhibit G.  Defendant further states that the terms of said proof of claim speak for

themselves.   The remaining allegations of Paragraph 38 of the Complaint are not directed

against Defendant, and therefore, he neither admits nor denies said allegations.

39.    From the time Passages knowingly began submitting false invoices to Medicare

and Medicaid, it incurred a civil liability to the United States for the full amount of the civil penalty

and treble damages as provided for in the FCA.

ANSWER: The allegations of Paragraph 35 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations; however, Defendant further states

that the terms of the FCA speak for themselves and demands that Plaintiff provide proof of the

amount(s) of any penalties and damages due under the FCA at all times relevant hereto.

40.    The United States could not pursue a cause of action under the FDCPA until after

the $9,000,000.00 "judgment in a criminal case" was entered against Passages.

ANSWER: The allegations of Paragraph 40 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations. Defendant also has insufficient

knowledge to form a belief as to the allegations of Paragraph 40 of the Complaint, and therefore,

he neither admits nor denies said allegations.

41.    Passages trained and caused to be trained Passages nurses to look for signs that

allegedly would qualify a patient for GIP care, and thus higher payments per day.

ANSWER: The allegations of Paragraph 41 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.

42.    That training was designed with an eye towards placing patients on GIP care that

did not legitimately qualify for GIP treatment.

ANSWER: The allegations of Paragraph 42 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.

43.    The scheme, as described in the Qui Tam Suit, the indictments, and the plea

agreements that are attached to this complaint, was designed and implemented by Passages to

skyrocket Passages' profits, at the expense of the federal government and/or the State of Illinois.

ANSWER: The allegations of Paragraph 43 of the Complaint are not directed against Defendant,

and therefore, he neither admits nor denies said allegations.

44.    During the period in which Passages submitted false invoices to Medicare and

Medicaid, and over billed those programs as described in CMS 's proof of claim, Passages received

and recorded to the IRS false profits. Passages then intentionally distributed the false profits to the

Defendant and others.

ANSWER: The allegations of Paragraph 44 of the Complaint are not directed against Defendant, and therefore, he neither admits nor denies said allegations; however, Defendant further states that he was not aware if any profits which may have been distributed to him were "false".

**F.     The Transfers**

45. Passages made the transfers of its property described in this complaint, to the Debtor's limited partners, were made with the actual intent to hinder, delay, or defraud certain creditors of this Estate, including the Federal government.

ANSWER: Defendant denies the allegations of Paragraph 45 of the Complaint.

46.     Beginning in the year 2009, the Debtor made the following distributions to Defendant: ("Transfers"):

| Payee | Tax Year | Amount |
|---|---|---|
| David Meiselman | 2009 | $30,070.00 ("Transfers 1") |
| David Meiselman | 2010 | $145,005.00 ("Transfers 2") |
| David Meiselman | 2011 | $245,615.00 ("Transfers 3') |
| David Meiselman | 2012 | $ 9,915.00 ("Transfers 4") |
| David Meiselman | 2013 | $ 19,520.00 ("Transfers 5") |
| | Total: | $450,125.00 |

Copies of Defendant's K-1's from the Debtor, evidencing the Transfers, are attached hereto and incorporated herein as Group Exhibit H.

ANSWER: Defendant admits that copies of his K-1's from the Debtor are attached to the Complaint herein as Group Exhibit H.  Defendant also admits that the amounts on Line 19A of the K-1 for each year correspond to the amounts and years listed in Paragraph 46 of the

Complaint.  Defendant denies the remaining allegations of Paragraph 46 of the Complaint.

47.    Related to Transfer 2 it appears that only $10,000.00 was transferred, on or after

October 26, 201 via checks for $5,000.00 and $5,000.00 dated on or about November 9, 2010

and December 15, 2010 respectively.

ANSWER: Defendant has insufficient knowledge to form a belief as to the allegations of

Paragraph 47 of the Complaint, and therefore, he neither admits nor denies said allegations.

48.    The Transfers referenced above were of property of the Debtor.

ANSWER: Defendant denies the allegations of Paragraph 48 of the Complaint.

49.    The Transfers were made to an insider.

ANSWER: Defendant admits that by virtue of his 25% membership interest in Debtor, he was an

insider of Debtor. Defendant denies the remaining allegations of Paragraph 49 of the Complaint.


50.    The Debtor was insolvent in each of the years from 2009 through 2013 considering

the liabilities referenced hereinabove and hereinbelow.

ANSWER: Defendant denies the allegations of Paragraph 50 of the Complaint.

51.    Each transfer referenced hereinabove threw the Debtor deeper into insolvency.

ANSWER: Defendant denies the allegations of Paragraph 51 of the Complaint.

52.    The Debtor was or became insolvent, at or before the time of the Transfers, by

virtue of the fact that it accrued debt for the monies it illegally obtained from Medicare. See

Exhibit G.

ANSWER: Defendant denies the allegations of Paragraph 52 of the Complaint.

53.    Furthermore, the Debtor was insolvent, at or before the time of the Transfers, for

reasons that include, but are not limited to, those stated in the $27 million dollars in additional

claims filed by the United States of America. See Exhibits E and F.

ANSWER: Defendant denies the allegations of Paragraph 53 of the Complaint.

## COUNT IV
### Claim Under 11 U.S.C. §544, 28 U.S.C. § 3304(b)(1)(A) and §3306(b)(1) of the FDCPA.

65.     Trustee repeats and realleges the allegations of paragraphs 1 through 53

hereinabove.

ANSWER: Defendant repeats his answers in Paragraphs 1 through 53 hereinabove as if fully set

forth herein.

66.     The Debtor made one or more of the Transfers with the actual intent to hinder,

delay, or defraud a creditor of the Estate.

ANSWER: Defendant denies the allegations of Paragraph 66 of the Complaint.

67.     Pursuant to §544(b)(1) of the Code and §3304(b)(1)(A) of the FDCPA the

Trustee is entitled to avoid Transfers 1 thru 5 listed hereinabove.

ANSWER: Defendant denies the allegations of Paragraph 67 of the Complaint.


## COUNT V
### Claim Under 11 U.S.C. §544, 28 U.S.C. § 3304(a)(1) and § 3306(b)of the FDCPA.

68. The Trustee repeats and realleges the allegations of paragraphs 1 through 53

hereinabove.

ANSWER: Defendant repeats his answers in Paragraphs 1 through 53

hereinabove as if fully set forth herein.

69. On the date(s) the Debtor made each of the Transfers, it was insolvent.

ANSWER: Defendant denies the allegations of Paragraph 69 of the Complaint.

70.        The Debtor made one or more of the Transfers without receiving a

reasonably equivalent value in exchange for the relevant transfer.

ANSWER: Defendant denies the allegations of Paragraph 70 of the Complaint.

71.        The Debtor was insolvent at the time or became insolvent as a result of

one or more of the Transfers.

ANSWER: Defendant denies the allegations of Paragraph 71 of the Complaint.

72.        Pursuant to §544(b)(1) of the Code and §3304(a)(1) of the FDCPA, the

Trustee is entitled to avoid $10,000.00 of Transfers 2, and the full amounts of Transfers 3

through 5 hereinabove.

ANSWER: Defendant denies the allegations of Paragraph 72 of the Complaint.

**COUNT VI**
**Claim Under 11 U.S.C. § 544 and § 3304(b)(1)(B) and § 3306(b)of the FDCPA.**

73.        The Trustee repeats and realleges the allegations of paragraphs 1 through 53

hereinabove.

ANSWER: Defendant repeats his answers in Paragraphs 1 through 53 hereinabove as if

fully set forth herein.

74.        One or more of the Transfers was made without receiving a reasonably

equivalent value in exchange for one or more of the Transfers.

ANSWER: Defendant denies the allegations of Paragraph 74 of the Complaint.

75.        On the date the Debtor made one or more of the Transfers referenced
            hereinabove:

A.        It was engaged or was about to engage in a business or transaction for which its
          remaining assets were unreasonably small in relation to the business or
          transaction; or

    B.    It intended to incur, or believed it would incur, and/or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

ANSWER: Defendant denies the allegations of Paragraph 75 of the Complaint.

76.    Pursuant to §544(b)(1) of the Code and §3304(b)(1)(B) of the FDCPA, the Trustee is entitled to avoid $10,000.00 of Transfers 2, and the full amounts of Transfers 3 through 5 hereinabove.

ANSWER: Defendant denies the allegations of Paragraph 76 of the Complaint.

## COUNT VII
## Money Judgment Pursuant to Section 550 of the Code.

77.    The Trustee restates and realleges the allegations contained hereinabove.

ANSWER: Defendant repeats his answers hereinabove as if fully set forth herein.

78.    Defendant is an initial transferee of the Transfers.

ANSWER: Defendant admits the allegations of Paragraph 78 of the Complaint.

79.    Pursuant to the provisions of Section 550(a)(1) of the Code, Plaintiff is entitled, to recover, for the benefit of the Estate, the property transferred or, if the Court so orders, a money judgment for the value of the property transferred as against the initial transferee or the entity for whose benefit such transfer was made with respect to any transfer which is avoided under § 544 of the Code.

    ANSWER: Defendant denies the allegations of Paragraph 79 of the Complaint.

## AFFIRMATIVE DEFENSES

### 1. Defendant provided value

A.      Defendant provided value to Debtor in exchange for some of the transfers which Plaintiff alleges that Debtor made to Defendant.

### 2. Defendant did not receive the transfers

B.      Defendant did not receive all of the transfers which Plaintiff alleges that Debtor made to Defendant.  Specifically, some of the amounts reflected on Defendant's K-1s constitute "phantom income" for which Defendant never received any funds or monies.

**WHEREFORE,** Defendant David Meiselman respectfully requests that this Honorable Court:

A.  Deny Plaintiff the relief requested in Counts IV through VII of Plaintiff's Complaint; and

B.  Grant him such other and further relief as the Court deems equitable.

Respectfully submitted,

By: */s/ James W. Corbett*
James W. Corbett,
Attorney for Defendant
David Meiselman

James W. Corbett
Attorney for Defendant
ARDC No. 6193936
PO Box 577542
Chicago, Illinois 60657
(312) 919-1965
jcorbettlaw@aol.com